## Case No. 15,976.
### UNITED STATES v. The OTTAWA.
[Newb. 536.] 1

District Court, D. Michigan. Jan., 1857.

STEAM PASSENGER VESSELS—INSPECTION AND REGULATION—FERRY BOATS.

1. [The exception in] the 42d section of the act of congress passed August 30, 1852 [10 Stat. 61], entitled "An act to amend an act, entitled 'An act to provide for the better security of the lives of passengers on board of vessels propelled in whole or in part by steam,' passed July 7, 1838 [5 Stat. 304], and for other purposes," cannot be so construed as to exclude boats or vessels ordinarily used as ferry or tug boats.

[Cited in American Transp. Co. v. Moore, 5 Mich. 390.]

2. Where a steamboat. built for a ferry boat, used in her daily employment as such, and occasionally as a tug boat. was employed one day in making several trips from Detroit to Hamtramck, three miles distant, carrying passengers to the grounds of the state fair; *held*, that such use did not change the ordinary character of the boat, or take her from the exception of the statute, or make her liable to the penalties of the act.

---

1 [Reported by John S. Newberry, Esq.]

In admiralty.

Levi Bishop, for libelants.
Walker & Russel, for the United States.

WILKINS, District Judge. This is a libel and information filed by the district attorney of the United States, on the complaint and information of one Thomas Chilvers, a resident of said district, in order to recover from the steamer Ottawa the penalty, by the second section of the act of congress of 1838 [5 Stat. 304], imposed on steamboats propelled in whole or in part by steam, transporting merchandise or passengers upon the navigable waters of the United States, without first having obtained a license under the provisions of the law, requiring the inspection of boilers and machinery. The first section of the act of 1852 [10 Stat. 61], amendatory of the act of 1838, provided that no such license should be granted by any collector, unless upon satisfactory evidence that all the provisions of the law were complied with, excepting, however, from its penal application, all steamers used as ferry boats, tug boats, towing boats and steamers under 150 tons burden, and used in whole or in part in the navigation of canals. By the libel, the court is informed, that on the 1st of October, 1856, the steamer Ottawa, owned by George B. Russel, was employed in the transportation of passengers on the Detroit river, between this city and the adjacent township of Hamtramck, without having been inspected or licensed pursuant to law. To this allegation the respondent avers, that the steamer Ottawa was built and used as a ferry boat and tug boat, and was enrolled and licensed as such, and as such was engaged on the day specified, and was always so used before and since: and that on the said day she made her regular trips as a ferry boat between Detroit and the town of Windsor, Canada West. The language of the exception contained in the forty-second section of the act of 1852, is very explicit; and taken in connection with the obvious design of the law, which was "the better security of the lives of passengers on board of vessels running on voyages between distant ports," cannot be so construed as to exclude boats or vessels ordinarily used as ferry or tug boats. In this case there was evidence that the municipal authority leased to the respondent the landing and wharf at the foot of Woodward avenue, to be used as a ferry landing: that he was the proprietor of a number of boats, used by him for the purposes of a ferry boat between this place and Windsor: and that this boat was built as a ferry boat, used as such, was daily employed in this ferry line, and occasionally as a tug boat. There is no proof that she was ever used as a passenger steamer, running between distant ports with either freight or passengers. On the day alleged in the libel, there being a state fair in the township of Hamtramck, she was employed in several trips in conveying visitors from the city

to the fair grounds, and it is contended by the libelant, that these occasional trips changed her ordinary character as a ferry boat and took her out of the exception of the statute. I think otherwise. The exception is not confined to vessels licensed as ferry boats. Ferry license and ferry usage are two different terms. The one applies to the privilege, the other to the vessel; and the legislature evidently had in view the inspection of vessels constructed for voyages or trips of more than an hour's duration, and with the usual accommodations of state rooms and dormitories as passenger boats. The one class of steamers is more exposed to peril than the other, and to afford security to life was the object of the penalty imposed, while the exception cannot be considered as embracing only licensed ferries. Whether this boat was engaged at the time as a ferry boat, in running between this place and Hamtramck, is not deemed material; or, whether there was a regular license or not. There being evidence that she was built as a ferry boat, and that such was her daily occupation. is considered as bringing her within the spirit and letter of the statutory exception. Libel dismissed.